EDWARD S. REDSTONE & another[1] vs. THOMAS N. O'CONNOR
& another,[2] trustees,[3] & others.[4,5]

No. 06-P-496.

Middlesex. March 7, 2007. - October 16, 2007.

Present: PERRETTA, BROWN, & CYPHER, JJ.

*Trust,* Beneficiary, Administrator, Attorney's fees. *Limitations, Statute of. Practice, Civil,* Attorney's fees.

In an action brought by the residual legatee of the decedent's estate against the trustees of three inter vivos trusts, claiming that a gift made under one of the trusts had lapsed for lack of a beneficiary and therefore reverted to the decedent's estate, the judge erred in granting summary judgment in favor of an intervener who claimed that he was an intended beneficiary of the trust in issue, where the trust's terms were unambiguous, and a proviso in the trust that benefited the intervener in one set of circumstances did not bespeak a more general intent on the decedent's part that the gift should pass to the intervener in other circumstances. [497-501]

This court declined to consider the propriety of a Probate and Family Court judge's determination that a claim was time barred, where the plaintiff failed to present an argument within the meaning of Mass.R.A.P. 16(a)(4). [501-502]

A probate judge properly denied a claim in an action seeking reimbursement from three inter vivos trusts for expenses the plaintiff incurred in raising a child, where the applicable statute of limitations barred the action, and where, even were the claim not time barred, a breach of the fiduciary duty owed by the trustees to the child did not, without more, provide an adequate basis to compel reimbursement to the plaintiff, in his individual capacity, for the child's support. [502-504]

[1]Madeline Redstone, wife of Edward S. Redstone, and a plaintiff below, has not joined in this appeal.

[2]Patricia Hechazarria.

[3]Of the February 17, 1959, Trust; the May 6, 1968, Trust; and the June 30, 1972, Trust.

[4]Michael Redstone, Shari Redstone, Brent Redstone, Sumner Redstone, and Edward Redstone, as executors of the estate of Belle Redstone. The executors of the estate of Belle Redstone did not submit a brief in this appeal.

[5]Michael Redstone, intervener, individually and as next friend of Alex Redstone, Emily Redstone, and Jesse Redstone.

A probate judge did not err in declining to exercise her discretion to award attorney's fees pursuant to G. L. c. 215, § 45. [504-505]

COMPLAINT in equity filed in the Middlesex Division of the Probate and Family Court Department on July 1, 2004.

The case was heard by *Randy J. Kaplan, J.*

*Wendy H. Sibbison* for Edward S. Redstone.

*Daniel V. Bakinowski* for Thomas N. O'Connor & another.

*Thomas N. O'Connor* for the intervener.

PERRETTA, J. These cross appeals arise out of an action brought by Edward S. Redstone against the trustees of three inter vivos trusts and the executors of his mother's estate claiming that a gift made under one of the trusts had lapsed for lack of a beneficiary, and that it must revert back to his mother's estate, of which he is a residual legatee. He claimed further that he was entitled to reimbursement from all three trusts for the support he provided to the trust beneficiaries as well as for administrative services provided. Edward's son Michael Redstone intervened in the action, asserting that he was an intended beneficiary of the trust in issue and opposing Edward's claim for reimbursement for support and administrative services. Based upon her reading of the trust instrument, the judge concluded that Michael was an intended beneficiary of the trust and granted his motion for summary judgment. She also denied Edward's claims for reimbursement from all three trusts. We conclude that the trust instrument does not support the determination that Michael was an intended beneficiary, and leave intact the ruling that the trustees were not entitled to attorney's fees. We affirm the dismissal of Edward's claims for reimbursement from the trusts, and remand the matter to the Probate and Family Court for entry of a judgment consistent with this opinion.

1. *The facts.*[6] Edward is the son of Mickey and Belle Redstone and the father of Ruth Ann and Michael. In 1959, Belle established the 1959 Belle Redstone Trust, the trust in issue

---

[6]We summarize the facts viewing the evidence in the light most favorable to Edward. See *Foster* v. *Group Health, Inc.*, 444 Mass. 668, 672 (2005).

(referred to throughout this opinion as the 1959 trust), for the benefit of her granddaughter, Ruth Ann.[7]

Under the terms of the 1959 trust, one-half of the trust principal and accumulated income was to be distributed to Ruth Ann upon her attainment of thirty years of age, with the remainder to be distributed to her at age thirty-five, whereupon the trust would terminate.[8]

Sections II(E) and II(F) of the 1959 trust respectively provide for the disposition of trust income and principal in the event that Ruth Ann died before full distribution of the trust property, either with or without issue. Should Ruth Ann leave issue, § II(E) provides:

> "In the event that . . . Ruth Ann should die before the full distribution of the trust property, *leaving issue*, then [the remaining] trust property shall . . . continue[] to be held in trust in equal shares for the benefit of her issue with . . . [discretion] . . . in the Trustees to . . . expend . . . part or all of the net income or principal of each such share . . . to assist in the maintenance, support, health, welfare and education of the person entitled to such share. Said trust shall continue for a period of twenty years after the death of Ruth Ann . . . . Upon the expiration of said twenty-year period, the Trustees shall distribute the then remaining principal and accumulated income . . . to each such issue . . . and the trust shall terminate. If any of such issue shall die before the expiration of said twenty-year period, his or her share shall be divided equally between the remaining issue living at the time of distribution." (Emphasis added.)

The terms of § II(F) are:

> "In the event that . . . Ruth Ann should die before the full distribution of the trust property *without leaving issue*,

---

[7]In 1968, Mickey created the 1968 Mickey Redstone Trust for the benefit of the four children of his and Belle's sons, Edward and Sumner. Two of the four grandchildren are Edward's children, Ruth Ann and Michael.

[8]Under the terms of the 1959 trust, the trustees were empowered to advance or delay the distribution of all or part of the trust estate under certain conditions. Edward initially asserted a claim against the trustees of the 1959 trust for breach of fiduciary duty based on their failure to distribute one-half the trust principal and accumulated income to Ruth Ann when she attained thirty years

the balance of the trust property . . . shall be added to [a] *trust for the benefit of Michael Redstone* [Ruth Ann's brother] . . . or shall be distributed free of trust[], depending upon whether said trust shall have been terminated . . . . And if Michael . . . shall then be deceased without [leaving issue], then the balance of the trust property shall be . . . distributed in accordance with [Ruth Ann's] Last Will and Testament[, or] if she . . . died intestate . . . to [her] heirs-at-law . . . ." (Emphasis added.)

Like the 1959 trust, the trust established simultaneously by Belle for Michael provided for discretionary payments from net income until he attained the age of thirty years and then for the distribution of the corpus of the trust to him at ages thirty and thirty-five. In the event he died before full distribution without leaving issue, the balance of that trust property was, in the first instance, to be added to the 1959 trust.[9]

As it happened, Ruth Ann died intestate in 1987 at age thirty-three, leaving one son, Gabriel Adam Redstone (Adam), then three years of age.[10] Following Ruth Ann's death, Edward raised his grandchild, Adam. About fifteen years later, in November, 2002, Edward and his then wife, Madeline, adopted Adam,[11] who died intestate and without issue in May, 2004, that is, before the time (twenty years) set by § II(E) of the 1959 trust for the distribution of trust assets to Ruth Ann's issue.

Ruth Ann and Adam were also the beneficiaries of the Ruth Ann Redstone Trust which was settled by Edward on June 30, 1972 (1972 trust). The trustees of the 1968 Mickey Redstone Trust (1968 trust) and 1972 trust had discretionary authority to make expenditures from trust principal and income for what we

---

of age. However, this claim was subsequently abandoned.

[9]Unlike the 1959 trust, the trust established for Michael's benefit provided that if he died leaving issue before full distribution of the trust property, one-third of the remaining trust property was to be held in trust for his surviving wife, if any, and the balance held in trust for his issue and the remainder distributed at the end of twenty years.

[10]It appears from what is before us that the trustees did not make a distribution of one-half the trust property to Ruth Ann when she attained the age of thirty. See note 8, *supra*.

[11]Edward and Madeline married after Ruth Ann's death.

shall generally refer to as Adam's support.[12]

About two months after Adam's death, Edward brought this action, alleging that the 1959 trust lapsed with Adam's death, and the corpus of the trust reverted to Belle's estate, of which he, Edward, is a residuary legatee. Edward also sought reimbursement from the 1959, 1968, and 1972 trusts for expenses incurred in raising Ruth Ann and Adam as well as for administrative services rendered to the trusts. Michael intervened in the suit individually and as next friend of his children. He and the defendant trustees also sought attorney's fees.

2. *Edward's appeal.* a. *The 1959 trust.* None of the contingencies expressed in § II(E) or § II(F) of the 1959 trust occurred. Rather, Ruth Ann died prior to the full distribution of the trust assets while leaving issue, her son Adam, who died subsequent to Ruth Ann but prior to a full distribution of the 1959 trust assets. This circumstance brings us to Edward and Michael's competing arguments on the question whether the gift lapsed for lack of a beneficiary, as Edward claims, or whether Belle intended to make a gift to Michael. Edward contends that the judge erred when she impermissibly "read in[to]" the 1959 trust instrument executed by Belle an intended gift to Michael in the circumstances presented.[13]

While acknowledging that "the [1959 t]rust does not expressly

---

[12]The 1968 trust provides in part: "[T]he Trustees shall use, apply and expend whatever part [of a share of the trust] principal or income . . . as [they] in their discretion shall deem necessary and advisable for the welfare and benefit of [Ruth Ann's] issue."

The 1972 trust grants the trustee of that trust:

"full discretionary powers . . . to use, apply and expend whatever part or all of the net income or principal of [a share of the trust] . . . to assist in the maintenance, support, health, welfare and education of [Ruth Ann's issue, should Ruth Ann die before full distribution of the trust property]."

[13]In further support of his argument, Edward suggests that there is another reasonable interpretation of the 1959 trust language, viz., that Adam's beneficial interest was not subject to a condition of survivorship and that the remainder interest in the 1959 trust vested in Adam's estate upon his death. In making this suggestion, Edward makes clear that he is *not* arguing that we should conclude that the interest in question vested in Adam's estate. Rather, he is pointing out that where the language of the 1959 trust instrument is reasonably susceptible to various interpretations, one cannot infer with any degree of

provide for the circumstances here [presented]," Michael contends that a literal interpretation of the language of the 1959 trust would frustrate Belle's intention as indicated by the clear language of § II(F), that is, to pass to him the assets of the trust in the event that Ruth Ann's rights under the trust failed.

The judge deemed Edward's reading of the 1959 trust "too narrow." She reasoned that §§ II(E) and II(F), read together with the trust as a whole, demonstrated Belle's intention that the trust corpus remain with both Ruth Ann and Michael or their issue and that the corpus pass to Belle's heirs at law only in the event that neither Ruth Ann nor Michael nor their issue survived. From that reading, the judge concluded, as matter of law, that Michael was entitled to receive Ruth Ann's, and later Adam's share, of the 1959 trust.

Our analysis of the competing claims before us begins with the determination that there is no ambiguity in the terms of the 1959 trust. Cf. *Flannery* v. *McNamara*, 432 Mass. 665, 669 (2000) ("Neither the fact that [the object of bounty] predeceased the decedent [and thus the gift failed], nor the absence of a residuary clause or a contingent beneficiary provision, makes [a] will ambiguous"). Neither Edward nor Michael contends otherwise.[14] Moreover, it appears from the judge's memorandum of decision that her analysis proceeded on the same basis, that the trust instrument was unambiguous.

Notwithstanding the absence of ambiguity in the terms of the 1959 trust, neither we nor the trial judge are bound to adhere to the language in that instrument when we are convinced that a reading of the instrument as a whole would frustrate the settlor's intent.[15] See *Sanger* v. *Bourke*, 209 Mass. 481, 486 (1911), quoting from *Metcalf* v. *First Parish in Framingham*, 128 Mass.

---

certainty that Belle intended for the trust assets to pass to Michael.

[14] Our conclusion that the terms of the trust are unambiguous makes it unnecessary for us to consider Michael's alternative argument that even if the terms of the trust were determined to be ambiguous, there is extrinsic evidence to support his position, and Edward's contention that any extrinsic evidence is not persuasive.

[15] As stated in *Boston Safe Deposit & Trust Co.* v. *Schmitt*, 349 Mass. 669, 672 (1965): "In appropriate cases, this court has supplied by implication an omission in the terms of a will." In determining Belle's intent in respect to the 1959 trust, we construe the trust instrument in the same manner as if the instrument were a will. See *Groden* v. *Kelley*, 382 Mass. 333, 336 n.4 (1981)

370, 374 (1880); *Boston Safe Deposit & Trust Co.* v. *Schmitt*, 349 Mass. 669, 672 (1965). As stated in *Schroeder* v. *Danielson*, 37 Mass. App. Ct. 450, 453 (1994):

> "The interpretation of a written trust is a matter of law to be resolved by the court. *Mazzola* v. *Myers*, 363 Mass. 625, 633 (1973). *Dana* v. *Gring*, 374 Mass. 109, 113 (1977). A trust should be construed 'to give effect to the intention of the settlor as ascertained from the language of the whole instrument considered in the light of the attendant circumstances.' *Harrison* v. *Marcus*, 396 Mass. 424, 429 (1985). We are in as good a position as the motion judge to do this."

We do not agree with Michael's contention that § II(F)'s proviso that the gift to Ruth Ann should inure to his benefit in the event that she die without issue bespeaks a more general intent on Belle's part, more specifically, that if the gift intended for Ruth Ann and her issue should fail, then it should pass to him. We think Michael's argument is not dissimilar to that advanced by the disappointed legatees but rejected by the court in *Wright* v. *Benttinen*, 352 Mass. 495, 496 (1967).

In *Wright*, the testator bequeathed the residue of his estate to his wife. He also provided that "[i]n the event that [he and his wife] should perish as the result of the same common disaster within sixty days of each other, then . . . whatever was left to her . . . shall . . . be equally divided between [the testator's] grandchildren then living." *Ibid.* Although the testator's wife predeceased him, her death was not under circumstances involving a common disaster. Nonetheless, the grandchildren argued that the will in controversy evidenced the testator's intention that the residuary should pass directly to them. *Id.* at 496-497. The court rejected the legatees' contention that a donor's intention to make a gift to an identified individual based upon one contingency was an adequate basis upon which to conclude what the donor would have intended had he foreseen the events that in fact occurred. *Id.* at 497. Rather, the court concluded that there was no manifestation of an intent by the testator in his will to dispose of the residuary of his estate on the contingency

(requirement to construe instrument to give effect to intention of donor essentially identical in both trusts and wills).

that came to pass. *Ibid. Boston Safe Deposit & Trust Co.* v. *Schmitt,* 349 Mass. at 671-673, is to similar effect. The fact that property may ultimately pass by Belle's will to one not benefited by the terms of the 1959 trust begs the question to whom she would have wanted the corpus distributed. Cf. *Wright* v. *Benttinen,* 352 Mass. at 497-498.

In support of his claim, Michael relies upon what he perceives to be the applicability of the presumption that a will should be construed to result in intestacy only if required. We think this proposition is inapplicable in the present case. In the first instance, this presumption applies only when the court cannot ascertain from the face of the will how the testator intended the property in controversy to be distributed. See *Flannery* v. *McNamara,* 432 Mass. at 670 & n.5. In any event, the matter before us does not involve a scheme of testamentary disposition. Rather, we are concerned with the terms of an inter vivos trust that does not threaten any intestate succession. Belle died testate, and any reversion will pass in accordance with the terms of her will.

There are additional reasons why we do not accept Michael's arguments concerning Belle's intentions in respect to the 1959 trust. Contrary to Michael's argument, Belle's intent to have trust property remain with her grandchildren and their issue cannot reasonably be ascertained from an over-all plan of the trust. Contrast, e.g., *Boston Safe Deposit & Trust Co.* v. *Coffin,* 152 Mass. 95, 101 (1890) (court could infer testator's intent through his like treatment of classes of beneficiaries); *Sanger* v. *Bourke,* 209 Mass. at 486-487 (same); *Renwick* v. *Macomber,* 225 Mass. 380, 384 (1917) (testatrix's will manifests her "intended equality of participation" by children of her husband or their issue as class); *New England Merchs. Natl. Bank* v. *Mason,* 350 Mass. 265, 266 & n.2 (1966) (testator's intent to show generosity toward his son). Nor does the 1959 trust set out an overarching intent to treat classes of beneficiaries equally. Contrast, e.g., *Boston Safe Deposit & Trust Co.* v. *Coffin,* 152 Mass. at 101; *Sanger* v. *Bourke,* 209 Mass. at 485-486. Further, the cases relied upon by Michael involve a testamentary disposition allowing for a presumption that the testator intended to dispose of the whole residuary by dividing it equally among branches of a family. In the present case, there is no need to construe the 1959 trust language to

avoid violating the settlor's intent, where Ruth Ann and Michael were treated the same by the express terms of the trust.

In further support of his "general scheme" argument, Michael points to the terms of the trust Belle created for his benefit, referred to in § II(F) of the 1959 trust, simultaneously with the trust for Ruth Ann's benefit. See note 9, *supra*. He argues that the terms of those two simultaneously created trusts show that Belle intended that if the gift for the benefit of one grandchild and his or her issue failed, then that gift should vest, in the first instance, in his or her sibling.

Assuming that it is appropriate to look to extrinsic evidence, i.e., the trust established simultaneously by Belle for the benefit of Michael, in the absence of any ambiguity in the terms of the 1959 trust, we think Michael's argument is not without some modicum of force upon first reading. However, we conclude that this is not a case in which a gift was in fact intended but inartfully or imperfectly expressed. Rather, it is a gift Belle might have made had she contemplated the events that in fact occurred. As stated in *Schena* v. *Pagliuca*, 9 Mass. App. Ct. 449, 452 (1980):

> "While intent is the lodestar of testamentary construction, it cannot be used . . . to supply a missing clause or to permit speculation as to what the testatrix might have intended had she foreseen or contemplated events as they actually turned out, but for which she had made no provision. *Anderson* v. *Bean*, 220 Mass. 360, 363 (1915). *Loring* v. *Dexter*, 256 Mass. 273, 278 (1926). *Boston Safe Deposit & Trust Co.* v. *Schmitt*, 349 Mass. [at] 671-673 . . . . *Wright* v. *Benttinen*, 352 Mass. at 497-498 . . . . 4 Bowe & Parker, Page on Wills § 30.7, and Massachusetts cases cited in n.8, at 41-42 (1961)."

Michael has not pointed to anything in §§ II(E) and II(F) of the 1959 trust that supports the construction he places on those clauses.

b. *The claims for reimbursement.* Edward also appeals from so much of the judgment as dismissed his claims seeking reimbursement from the 1959, 1968, and 1972 trusts. See note 12, *supra*. His claims for reimbursement fall into two categories:

those for expenses incurred in raising Adam and those as payment for services rendered in connection with the administration of the trusts during calendar years 2001 and 2002.[16] For the reasons set out below, we conclude that Edward has failed to demonstrate an adequate basis for disturbing the judgment dismissing his claims. See *Kunen* v. *First Agric. Natl. Bank*, 6 Mass. App. Ct. 684, 689 (1978); *Walter* v. *Placontrol, Inc.*, 65 Mass. App. Ct. 298, 303 (2005).

i. *Edward's administrative services.* Edward sought reimbursement from the trusts on the bases of quantum meruit and unjust enrichment. The judge concluded that Edward had no reasonable expectation of proving the necessary elements to sustain his theories of liability and that he had failed to bring his claims within the two-year limitation period set out in G. L. c. 260, § 11. On appeal he addresses only the issue of his claims being barred by the statute.

Edward has failed to present an argument within the meaning of Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975), demonstrating with citations to legal authorities and references to the materials in the summary judgment record that the judge was in error. Consequently, we do not consider the propriety of the judge's determination that his claim was time barred. See *Cameron* v. *Carelli*, 39 Mass. App. Ct. 81, 85-86 (1995), and cases therein cited. Even assuming that Edward's claim was not time barred, we nonetheless would conclude that he has failed to sustain his burden of demonstrating an adequate basis for disturbance of the dismissal of this claim. See *Walter* v. *Placontrol, Inc.*, 65 Mass. App. Ct. at 303.

ii. *Edward's support of Adam.* Edward also sought reimbursement from the 1959, 1968, and 1972 trusts for the expenses he incurred in raising Adam. The judge allowed Michael's motion for summary judgment on the grounds that: (1) Edward's claim alleging a breach of the trustees' fiduciary obligation to inquire about and provide for Adam's support was time barred by the three-year limitation period set out in G. L. c. 260, § 2A; and (2) there was insufficient evidence in the summary judgment

---

[16]We note that in respect to the 1968 trust, Edward appeals from the dismissal of his claims only insofar as they pertain to those amounts which might be apportioned to and charged against Michael's "share" of the 1959 trust.

record to sustain Edward's claim for reimbursement based on a theory of unjust enrichment resulting from his support of Adam.

As found by the judge on the undisputed facts, Edward has served as settlor or trustee for all three of the trusts from which he seeks reimbursement. He was also Adam's legal guardian and was in contact with the trustees at all times. The judge concluded:

> "To suggest that [Edward] did not know of a breach of fiduciary duty by the Trustees against Adam until after July 2, 2001 (three years prior to when [Edward] filed the claim), asks this Court to abandon reason and is beyond inference. The statute of limitations has run on this action."

We need say no more on this point other than that we agree.

Even were Edward's claim not time barred, he would not be entitled to a trial on his claim for breach of fiduciary duty. As a trustee, he knew or should have known that a trustee has the discretionary power, exercised with "[p]rudence and reasonableness," *Marsman* v. *Nasca*, 30 Mass. App. Ct. 789, 796 (1991) (citation omitted), to make payments from trust funds for the support and maintenance of a trust beneficiary as well as to make reasonable inquiry into the financial or support needs of the beneficiary. *Ibid.* See *Old Colony Trust Co.* v. *Rodd*, 356 Mass. 584, 589-590 (1970).

These duties, however, are owed to the beneficiaries of a trust. Consequently, any amounts wrongfully withheld from Adam by the trustees were, in the first instance, his property, title to which vested in the administrator of his estate upon his death. See *Marsman* v. *Nasca*, 30 Mass. App. Ct. at 798 (remedy for failure to make payments of trust principal is imposition of constructive trust in favor of beneficiary's estate). Cf. *Stuck* v. *Schumm*, 290 Mass. 159, 163-164 (1935) (title to intestate's personal property vested in administrator of her estate who alone had right to bring action for its recovery). Edward, however, brought this action in his individual capacity rather than as Adam's next friend or administrator of his estate. Consequently, Edward's position on this matter is that of a claimant against the trusts to which Adam's estate might have a claim. A breach of the fiduciary duty owed to Adam does not, without more,

provide an adequate basis to compel reimbursement to Edward for Adam's support.

3. *Request for attorney's fees.* The trustees sought attorney's fees pursuant to G. L. c. 215, § 45.[17] The motion apparently rested on the ground that the action was brought in bad faith, motivated by Edward's personal animosity toward Michael.[18]

In ruling on the motion, the judge found that Edward had not acted in "bad faith" as that term is discussed in *Massachusetts Adventura Travel, Inc.* v. *Mason,* 27 Mass. App. Ct. 293, 296 (1989), citing to and quoting from *Spiegel* v. *Beacon Participations, Inc.,* 297 Mass. 398, 416-417 (1937).[19] The judge further found that some of Edward's claims reflected poor judgment rather than bad faith and that any bad faith that might be imputed to Edward by reason of the claim he abandoned, see note 8, *supra,* did not "permeate" the complaint as a whole. See *Datacomm Interface, Inc.* v. *Computerworld, Inc.,* 396 Mass. 760, 782 (1986). As also determined by the judge, the remaining claims set out in Edward's complaint presented valid questions of law that required her to construe the language of the 1959 trust. On this matter, see part 2, *supra.*

Concluding that Edward did not act with a "malevolent purpose and design, i.e., with bad faith," in bringing this action,

---

[17]Michael and the trustees also sought fees pursuant to G. L. c. 231, § 6F. The judge denied their motions, and the Probate and Family Court docket does not reflect that notices of appeal were filed. Had timely notices of appeal been filed, jurisdiction over such appeals would lie with a single justice of this court. See G. L. c. 231, § 6G; *Danger Records, Inc.* v. *Berger,* 444 Mass. 1, 8-9 (2005); *Bailey* v. *Shriberg,* 31 Mass. App. Ct. 277, 282-284 (1991). This court, therefore, cannot consider the propriety of the judge's ruling under G. L. c. 231, § 6F.

[18]The trustees' assertion on this point is not supported by their citations to the record appendix. Nor does their petition disclose the grounds upon which attorney's fees were sought, and a memorandum referred to in the petition does not appear in the record.

[19]As stated by Chief Justice Rugg in *Spiegel* v. *Beacon Participations, Inc.,* 297 Mass. at 416:

" 'Bad faith' is a general and somewhat indefinite term. It has no constricted meaning. It cannot be defined with exactness. It is not simply bad judgment. It is not merely negligence. It imports a dishonest purpose or some moral obliquity. It implies conscious doing of wrong. It means a breach of a known duty through some motive of interest or ill will. It partakes of the nature of fraud."

the judge declined to exercise her discretion to award the trustees attorney's fees pursuant to G. L. c. 215, § 45. See *Roy* v. *Rubin*, 35 Mass. App. Ct. 633, 635 (1993).

Based upon the reasons given by the judge in denying the motion for attorney's fees, our discussion concerning the merits of the controversy between Edward and Michael, see part 2 of this opinion, *supra*, and the absence of any helpful argument on the claimed error concerning the denial of the request for attorney's fees, we see no basis for disturbing the judge's rulings on the motion.

4. *Conclusion.* The final judgment dated April 6, 2005, dismissing all counts of the plaintiff's complaint is affirmed in part and reversed in part. Judgment dismissing count II of the amended complaint dated September 1, 2004, is vacated, and judgment is to enter for the plaintiff on that count. The remainder of the judgment is affirmed. The case is remanded to the Probate and Family Court Department of the Trial Court for entry of judgment as so modified.

The judgment dated February 11, 2005, on the defendants' motion for attorney's fees is affirmed.

*So ordered.*