*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MICHELLE M. VEUCASOVIC,

      Plaintiff-Appellant,

v

CRAIG D. VEUCASOVIC, FMR CORP.,
FIDELITY MANAGEMENT TRUST, and
FIDELITY BROKERAGE SERVICES, LLC,

      Defendants-Appellees.

UNPUBLISHED
July 25, 2024

No. 366978
Wayne Circuit Court
LC No. 22-010031-CK

Before: MARKEY, P.J., and BORRELLO and GARRETT, JJ.

PER CURIAM.

In this declaratory judgment action, the plaintiff appeals as of right the trial court's order entering a declaratory judgment enforcing the decedent's May 17, 2007 beneficiary designations. For the reasons set forth in this opinion, we vacate this order and remand for further proceedings consistent with this opinion.

## I. BACKGROUND

This appeal arises from a dispute over the proper distribution of the decedent's retirement account (IRA) held by Fidelity Investments. The decedent, Barbara Veucasovic, passed away in June 2020. Plaintiff Michelle Veucasovic is Barbara's[1] daughter and the personal representative of Barbara's estate. Defendant Craig Veucasovic is Michelle's brother and Barbara's son.

In this case, the dispute centers on the interpretation of Barbara's IRA beneficiary designations and the potential impact of the absence of a trust on asset allocation.

---

[1] Because the parties in this case are family members that share the same last name, we will refer to the parties by first name.

Barbara made her initial beneficiary designations on May 17, 2007, as follows:

Michelle M Veucasovic
Relationship Non Spouse
Share 33.33%

Deena Lynn Hazlett
Relationship Non Spouse
Share 33.34%

Craig D Veucasovic
Relationship Non Spouse
Share 33.33%

On January 5, 2016, the beneficiary designations were changed as follows:

Michelle M Veucasovic
Relationship Non Spouse
Share 50.00%

Brooke L. Hazlett
Relationship Trust
Share 20.00%

Craig D Veucasovic
Relationship Trust
Share 20.00%

Andrew W. Hazlette
Relationship Trust
Share 10.00%


On December 11, 2016, the beneficiary designations were changed as follows:

Michelle M Veucasovic
Relationship Non Spouse Individual
Share 50.00%

Craig D Veucasovic
Relationship Trust
Share 30.00%

Brittany Marie Hazlett
Relationship Non Spouse Individual
Share 20.00%

On April 17, 2018, the beneficiary designations were changed as follows:

Michelle M Veucasovic
Relationship Non Spouse Individual
Share 50.00%

Craig D Veucasovic
Relationship Trust
Share 50.00%

Concerning the April 17, 2018 beneficiary designations, both were designated "primary beneficiaries." No secondary or contingent beneficiaries were selected. Article VIII, Section 26 of the Fidelity IRA Custodial Agreement applicable to Barbara's IRA provided as follows:

> **26. Governing Law. This Agreement, and the duties and obligations of the Company and the Custodian under this Agreement, shall be construed, administered and enforced according to the laws of the Commonwealth of Massachusetts, except as superseded by federal law or statute.**

It was undisputed that despite referencing a "trust" for Craig in her IRA beneficiary designation, Barbara never formally took any steps to create a trust for Craig's benefit. In a letter dated October 6, 2021, Fidelity responded to Michelle's claim for the remaining 50% balance of the IRA and informed Michelle that it was unable to determine whether Barbara intended to "name Craig Veucasovic as a Trust or an Individual since the designation contains the individual's date of birth." Consequently, Fidelity would not transfer the 50% share allocated for Craig without a court order or Craig's consent.

On August 23, 2022, Michelle filed this action in the circuit court seeking declaratory relief regarding the proper distribution of Barbara's IRA held by Fidelity Investments. The complaint indicated that Michelle brought this action in her capacity and not in her capacity as the personal representative of Barbra's estate, which was not an interested party in the matter. Michelle alleged that defendant FMR Corp. was the parent company for companies operating under the Fidelity Investments trade name, which included defendants Fidelity Management Trust and Fidelity Brokerage Services.

In her complaint, Michelle alleged that she had initially received 100% of the value of Barbara's IRA account after Barbara's death and that this action was subsequently "reversed." Half of the proceeds were "taken back" by Fidelity because Fidelity was unable to determine Barbara's intent regarding whether a trust had been designated on Craig's behalf as a beneficiary or whether Craig had been named a beneficiary in his capacity. Michelle claimed that a trust on Craig's behalf had been designated as the beneficiary of Craig's alleged share and that because this trust "never came into existence" and because it was not Barbara's intent to name Craig as a beneficiary in his individual capacity, Michelle was entitled to the entire IRA account as the "surviving and sole beneficiary." Michelle sought a declaratory judgment requiring the remaining 50% of Barbara's IRA account to be paid to Michelle, with no costs or attorney fees to be awarded to any party.

Michelle relied on Article VIII, Section 7 of the Fidelity IRA Custodial Agreement to support her contention that "since Plaintiff, Michelle M. VeuCasovic was the only beneficiary on the date of death of Barbara A. VeuCasovic she is entitled to all of the proceeds of the IRA account . . . pursuant to the beneficiary designation language . . . found in the Custodial Agreement . . . since a Trust for Craig D. VeuCasovic never came into existence . . ."

Article VIII, Section 7 of the Fidelity IRA Custodial Agreement provided in relevant part as follows:

**7. Designation of Beneficiary.**

A Depositor may designate a Beneficiary for his or her Account as follows:

(a) *General*. A Depositor . . . may designate a Beneficiary or Beneficiaries at any time, and any such designation may be changed or revoked at any time, by a designation executed by the Depositor . . . in a form and manner acceptable to, and filed with, the Custodian . . . The latest such designation or change or revocation shall control except as determined by applicable law. If the Depositor had not by the date of his or her death properly designated a Beneficiary in accordance with the preceding sentence, or if no designated primary or contingent Beneficiary survives the Depositor, the Depositor's Beneficiary shall be his or her surviving spouse, but if he or she has no surviving spouse, his or her estate. If the Depositor designates more than one primary or contingent Beneficiary but does not specify the percentages to which such Beneficiary(ies) is entitled, payment will be made to the surviving Beneficiary(ies), as applicable, in equal shares. Unless otherwise designated by the Depositor in a form and manner acceptable to the Custodian, if a primary or contingent Beneficiary designated by the Depositor predeceases the Depositor, the Shares and Other Funding Vehicles for which that deceased Beneficiary is entitled will be divided equally among the surviving primary and contingent Beneficiary(ies), as applicable. . . . Unless otherwise designated by the Depositor in a form and manner acceptable to the Custodian, if there are no primary Beneficiaries living at the time of the Depositor's death, payment of the Depositor's Account upon his or her death will be made to the surviving contingent Beneficiaries designated by the Depositor. If a Beneficiary does not predecease the Depositor but dies before receiving his or her entire interest in the Custodial Account, his or her remaining interest in the Custodial Account shall be paid to a Beneficiary or Beneficiaries designated by such Beneficiary(ies) as his or her successor Beneficiary in a form and manner acceptable to, and filed with, the Custodian; provided, however, that such designation must be received and accepted by the Custodian in accordance with this section. If no proper designation has been made by such Beneficiary in accordance with this section, distributions will be made to such Beneficiary's estate. . . . In all cases, the Custodian shall be authorized to rely on any representation of facts made by the Depositor, the executor or administrator of the estate of the Depositor, any Beneficiary, the executor or administrator of the estate of any Beneficiary, or any other person deemed appropriate by the Custodian in determining the identity of unnamed Beneficiaries.

* * *

(d) *Judicial Determination*. Anything to the contrary herein notwithstanding, in the event of reasonable doubt respecting the proper course of action to be taken, the Custodian may in its sole and absolute discretion resolve such doubt by judicial determination which shall be binding on all parties claiming any interest in the Account. . . .

The Fidelity defendants (FMR Corp., Fidelity Management Trust Co., and Fidelity Brokerage Services LLC) were dismissed by stipulation between Michelle and the Fidelity defendants. The order provided that the IRA account would be restricted from withdrawals or distributions pending further court orders. Michelle's claims against the Fidelity defendants were dismissed with prejudice. The stipulation provided that the Fidelity defendants were neutral stakeholders whose presence in the suit was not required to adjudicate the matter properly. Still, the Fidelity defendants agreed to participate as necessary in discovery.

A default was entered against Craig for failure to plead or otherwise defend. Michelle moved for entry of a default judgment against Craig, requiring Fidelity to list Michelle as the 100% primary beneficiary of Barbara's IRA account and to transfer all of the assets in that account to Michelle under Article VIII, Section 7(a) of the Fidelity IRA Custodial Agreement. The trial court decided to hold an evidentiary hearing under MCR 2.603(B)(3)(b).

At the hearing, Autumn Webster, an employee of Fidelity in the personal investing operations department, testified that her department dealt with "accounts like IRAs" and was responsible for processing forms for these accounts. She indicated that it was not unusual for a trust to be named as a beneficiary. Webster stated, "We just code what we are given on the form from the customer." According to Webster, it was her understanding that designating a "non-spouse" beneficiary meant that the beneficiary was "an individual" and that designating a "trust" as a beneficiary meant that the beneficiary was "an entity" rather than an individual. She also indicated that no additional documentation was required when a customer designated a trust as a beneficiary. In her job, Webster did not deal with distributions to beneficiaries.

Michelle's counsel specifically asked Webster about whether a trust needed to be created for a designated trust beneficiary to receive a distribution:

> *Q*. It'll be your understanding if a Trust is listed, there has to be a Trust that comes into existence in order for them to receive their beneficiary share, correct?
>
> *A*. That is out of the scope of my knowledge.

The court noted that the beneficiary information included a column for "Date of Birth/Trust" and that a birthdate was listed for both Michelle and Craig, who were listed as the current beneficiaries of Barbara's IRA. The court asked Webster whether that fact had "any significance . . . in terms of what you code," and Webster responded, "Not for us, we code exactly what we're given on the form." The court continued to question Webster as follows:

> THE COURT: If it's a Trust, should there be something listed in those columns other than the beneficiary's birthdate?

THE WITNESS: It could be the date of Trust.

THE COURT: Have you seen that in your coding where the date of Trust is listed?

THE WITNESS: Yes.

THE COURT: Would you consider it odd in your job if a birthdate was listed for a Trust relationship versus a Trust date in that column where it says date of birth / Trust?

THE WITNESS: Potentially, but we –

THE COURT: Do you take any action when you don't have the Trust date?

THE WITNESS: No, it's not required.

THE COURT: Okay. Is it required for Fidelity to have a copy of the Trust?

THE WITNESS: Not to my knowledge.

Michelle's counsel argued, "that the policy terms control under Massachusetts law and Michigan law." Counsel further argued that since the trust for Craig's benefit did not exist, "it defers to the sole surviving beneficiary, and we have Michigan law on that . . . ." Counsel cited MCL 700.6307 in support of this contention. Additionally, counsel maintained that the above-quoted section of the Fidelity IRA Custodial Agreement regarding the designation of beneficiaries meant that "it always defers to the surviving beneficiary" and "[i]f she chooses not to create a Trust, then that beneficiary designation is a nullity[,]" "[t]here's nothing to award, [and] the only surviving beneficiary is Michelle because there is no Trust for Craig."

The trial court indicated that it was not convinced by reading the pertinent section of the Fidelity IRA Custodial Agreement proposed by Michelle's counsel. The court stated, "Well, they're talking about the death of the other beneficiary; they're not talking about an invalid beneficiary." Further, the court stated,

I mean, nobody died. I mean you're arguing that Craig Veucasovic's beneficiary designation is invalid, that's not the same as him dying. Generally when a designation is invalid, it renders a whole set of designations invalid and you go to the previous set of designations . . .

The court asked Michelle's counsel, "Where does it say that the remaining beneficiary gets it if another beneficiary share fails[?]" Michelle's counsel referred to Article VIII, Section 7(a) of the Fidelity IRA Custodial Agreement.

The court noted that the initial beneficiary designations in 2007 were the only ones that did not include a trust as a beneficiary. Further, the parties agreed that Barbara never created any of the trusts listed in her various beneficiary designations over the years. Consequently, the court ruled:

So we really only have one good set of beneficiary designations, which is the May 17, 2007 designations that gave Michelle a third, Deanna a third, and Craig a third. Those are really the only, that's really the only set of valid beneficiary designations that add up to a hundred percent.

* * *

But your point is established that Barbara Veucasovic did not want that 50% share to go directly to Craig Veucasovic. And so we then come to the question that that share fails because there was never a Trust set up, and so I have to go by what's the plain language of what's happening here. That 50% share fails.

And so we come to the next question then after that. We have a share that's failed, what happens to the failed share, and there's nothing in the Fidelity arrangements dictating that. We know that the law, prevailing law is, I mean certainly it's discussed in one of the cases that you submitted, although that wasn't the outcome of that case because they determined that the new beneficiary designations were good, but they do discuss in one of the cases that you submitted . . . that if they're not good, then the new beneficiary designations do not take effect and you go back to the prior set of beneficiary designations.

* * *

. . . [W]hen I invalidated the 50% share of Craig Veucasovic, 'cause

there was no Trust set up, we no longer have a hundred percent at that point. . . .

* * *

. . . There's just no authority, at least no authority to the Court that's presented here that shows that a failed beneficiary share goes to the remaining beneficiaries, there's just no authority for that.

And so the Court has to go with the prevailing authority since the 2018 shares failed, because Craig's share was invalid. The 2016 designations fail because, once again, Craig's share was listed as a Trust in the December 11, 2016, those designations failed.

The January 5, 2016 designations fail because they're Craig Veucasovic, Andrew Hazlett, and Brooke Hazlett, those shares failed 'cause there were no Trust[s] set up for them, all of those sets of designations failed.

The only one that doesn't fail is the May 17, 2007 designations, 'cause it lists Michelle Veucasovic, Deanna Hazlett, and Craig Veucasovic all with individual shares of 33%. There's no Trust to be set up, that's the only set of be beneficiary designations that are valid in this whole chain of events.

* * *

. . . There's no authority for the Court to give Craig's share to Michelle even though Craig's share failed, there's no authority to give his share to the remaining beneficiary. And the fact that Craig Veucasovic's share fails renders that whole set of designations invalid, because they didn't provide for a hundred percent of the interests under existing law.

So unfortunately we have to just keep going back 'til we find a set of valid designations, which we don't find until May 17, 2007, so those have to be the designations that survive. . . .

\* \* \*

So the Court really has no choice but to enter a declaratory judgment that those are the designations which are to be followed at this point, and that's the directive that will be issued to Fidelity.

The trial court entered a declaratory judgment order denying enforcement of the April 17, 2018, beneficiary designations and ordering enforcement of the May 17, 2007, beneficiary designations for the reasons stated on the record. The court denied Michelle's motion for reconsideration. This appeal followed.

## II. STANDARD OF REVIEW

This Court reviews "the trial court's decision to grant or deny declaratory relief for an abuse of discretion." *The Reserve at Heritage Villiage Ass'n v Warren Fin Acquisition, LLC*, 305 Mich App 92, 104; 850 NW2d 649 (2014) (quotation marks and citation omitted). Questions of law relating to a declaratory judgment are reviewed de novo. *T & V Assoc, Inc v Dir of Health & Human Servs*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket No. 361727); slip op at 8. "A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes or when it makes an error of law." *Id*. (citation omitted).

## III. ANALYSIS

Here, determining the proper beneficiaries of Barbara's Fidelity IRA account is at issue.

IRAs are creatures of federal statute, designed as a means for individuals to save for retirement. *Clark v Rameker*, 573 US 122, 124-125; 134 S Ct 2242; 189 L Ed 2d 157 (2014). In general terms, an IRA is "a trust created or organized in the United States for the exclusive benefit of an individual or his beneficiaries, but only if the written governing instrument creating the trust" satisfies specific requirements not at issue in the present case. 26 USC 408(a); see also 26 USC 408A(b); 26 USC 7701(a)(37)(A). In the words of one commentator, "[a]n IRA account is a private contractual arrangement between the individual accountholder and the account custodian she chooses." Sterk & Leslie, *Accidental Inheritance: Retirement Accounts and the Hidden Law of Succession*, 89 NYU L Rev 165, 181 (2014). Thus, in general,

[t]he custodian manages the funds and distributes them to the accountholder on retirement. If the accountholder dies before all the funds are distributed, the custodian will distribute any remaining assets in accordance with the contract

-8-

terms. Those terms allow the accountholder to designate beneficiaries, and provide that, in the event there is no effective designation, the remaining assets shall be distributed as the custodial contract directs. When disputes arise about disposition of IRA assets, the disputes are governed by state law, which varies considerably in the treatment of these issues. [*Id*.]

When interpreting a contract, a court must "determine the intent of the parties by examining the language of the contract according to its plain and ordinary meaning." *In re Smith Trust*, 480 Mich 19, 24; 745 NW2d 754 (2008). "If the contractual language is unambiguous, courts must interpret and enforce the contract as written, because an unambiguous contract reflects the parties' intent as a matter of law." *Id*.

A threshold issue, in this case, is the choice-of-law provision in the Fidelity IRA Custodial Agreement, which provides: "**This Agreement, and the duties and obligations of the Company and the Custodian under this Agreement, shall be construed, administered and enforced according to the laws of the Commonwealth of Massachusetts, except as superseded by federal law or statute.**"

" 'Michigan's public policy favors the enforcement of contractual forum-selection clauses and choice-of-law provisions.' " *Barshaw v Allegheny Performance Plastics, LLC*, 334 Mich App 741, 748; 965 NW2d 729 (2020), quoting *Turcheck v Amerifund Fin, Inc*, 272 Mich App 341, 345; 725 NW2d 684 (2006). "Michigan courts will enforce contractual choice-of-law provisions if certain conditions are met." *Turcheck*, 272 Mich App at 346.

In *Chrysler Corp v Skyline Indus Servs, Inc*, 448 Mich 113, 124-125; 528 NW2d 698 (1995), our Supreme Court adopted §§ 187 and 188 of the Restatement Conflict of Laws, 2d, as "an approach more in line with modern-day contracting realities" in providing "sound considerations that may guide a court in resolving specific conflicts between the contract laws of different states." The Court stated that its "concern [was] to balance the expectations of the parties with the interests of [the relevant states]." *Chrysler*, 448 Mich at 125. Quoting comments from the Restatement, our Supreme Court reasoned that " '[p]rime objectives of contract law are to protect the justified expectations of the parties and to make it possible for them to foretell with accuracy what will be their rights and liabilities under the contract,' " but " 'regard must also be had for state interests and for state regulation.' " *Id*., quoting Restatement, § 187, comments *e* & *g*.

Section 187 of the Restatement provides as follows:

(1) The law of the state chosen by the parties to govern their contractual rights and duties will be applied if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue.

(2) The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either

-9-

(a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or

(b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

(3) In the absence of a contrary indication of intention, the reference is to the local law of the state of the chosen law.

Comment *c* to § 187 concerns Subsection (1) and states as follows:

*c. Issues the parties could have determined by explicit agreement directed to particular issue.* The rule of this Subsection is a rule providing for incorporation by reference and is not a rule of choice of law. The parties, generally speaking, have power to determine the terms of their contractual engagements. They may spell out these terms in the contract. In the alternative, they may incorporate into the contract by reference extrinsic material which may, among other things, be the provisions of some foreign law. In such instances, the forum will apply the applicable provisions of the law of the designated state in order to effectuate the intentions of the parties. So much has never been doubted. The point deserves emphasis nevertheless because most rules of contract law are designed to fill gaps in a contract which the parties could themselves have filled with express provisions. This is generally true, for example, of rules relating to construction, to conditions precedent and subsequent, to sufficiency of performance and to excuse for nonperformance, including questions of frustration and impossibility. As to all such matters, the forum will apply the provisions of the chosen law.

Whether the parties could have determined a particular issue by explicit agreement directed to that issue is a question to be determined by the local law of the state selected by application of the rule of § 188. Usually, however, this will be a question that would be decided the same way by the relevant local law rules of all the potentially interested states. On such occasions, there is no need for the forum to determine the state of the applicable law.

Comment *d* to § 187 states that examples of issues that the parties could not have decided by explicit agreement "are those involving capacity, formalities and substantial validity." Thus, a

person cannot vest himself with contractual capacity by stating in the contract that he has such capacity. He cannot dispense with formal requirements, such as that of a writing, by agreeing with the other party that the contract shall be binding without them. Nor can he by a similar device avoid issues of substantial validity, such as whether the contract is illegal. [*Id.*]

Comment *e* to § 187 provides a convincing rationale that is relevant to deciding whether to give effect to the parties choice of law in this case; that comment states in pertinent part:

-10-

*e. Rationale*. Prime objectives of contract law are to protect the justified expectations of the parties and to make it possible for them to foretell with accuracy what will be their rights and liabilities under the contract. These objectives may best be attained in multistate transactions by letting the parties choose the law to govern the validity of the contract and the rights created thereby. In this way, certainty and predictability of result are most likely to be secured. Giving parties this power of choice is also consistent with the fact that, in contrast to other areas of the law, persons are free within broad limits to determine the nature of their contractual obligations.

The rule of § 188 of the Restatement "applies in all situations where there has not been an effective choice of the applicable law by the parties" under § 187. Restatement, § 188, comment *a*. Section 188 provides as follows:

(1) The rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties under the principles stated in § 6.

(2) In the absence of an effective choice of law by the parties (see § 187), the contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

(a) the place of contracting,

(b) the place of negotiation of the contract,

(c) the place of performance,

(d) the location of the subject matter of the contract, and

(e) the domicil, residence, nationality, place of incorporation and place of business of the parties.

These contacts are to be evaluated according to their relative importance with respect to the particular issue.

(3) If the place of negotiating the contract and the place of performance are in the same state, the local law of this state will usually be applied, except as otherwise provided in §§ 189-199 and 203.

Here, the fundamental issue in dispute concerns the proper interpretation of Barbara's beneficiary designations for her IRA account and the legal effect of specific facts—such as that trust for Craig, which was never created—on the distribution to Barbara's designated beneficiaries. To answer these questions, this Court must determine the proper law to apply by first determining the effect to be given to the contractual language in the Fidelity Custodial Agreement that "**This Agreement, and the duties and obligations of the Company and the Custodian under this**

**Agreement, shall be construed, administered and enforced according to the laws of the Commonwealth of Massachusetts, except as superseded by federal law or statute.**"

Under the Restatement approach, "[t]he law of the state chosen by the parties to govern their contractual rights and duties will be applied if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue." Restatement, § 187(1). Determining whether the particular issue presented in this case is one that the parties could have resolved by explicit agreement potentially implicates the local law of all potentially interested states. Restatement, § 187(1), comment *c*. As this case has been presented, the potentially interested states are Michigan—where the action was filed, Barbara, Michelle, and Craig were apparently domiciled, and where the Fidelity defendants conducted business—and Massachusetts, under the choice-of-law clause.

Like Michigan, Massachusetts also relies on the Restatement Conflict of Laws 2d, §§ 187 and 188 to decide whether to give effect to a contractual choice-of-laws provision. In *Taylor v Eastern Connection Operating, Inc*, 465 Mass 191, 194-196; 988 NE2d 408 (2013), the Supreme Judicial Court of Massachusetts addressed whether a contractual choice-of-law provision would be given effect, beginning its analysis of the issue in relevant part as follows:

> In assessing which State's law to apply . . ., "we look to our established 'functional' choice of law principles and to the Restatement (Second) of Conflict of Laws [ (1971) ] [ (Restatement) ], with which those principles generally are in accord." Where, as here, the parties have expressed a specific intent as to the governing law, Massachusetts courts generally uphold the parties' choice.

> Under the Restatement, if the particular issue to which the choice-of-law clause is being applied is "one which the parties could have resolved by an explicit provision in [the contract] directed to that issue," Restatement, *supra* at § 187(1), the parties' choice of law should be upheld, on the theory that, where permissible, the parties "may incorporate into the contract by reference extrinsic material which may, among other things, be the provisions of some foreign law." *Id*. at § 187 comment c. [Some citations omitted; alterations in original.]

Massachusetts courts apply both §§ 187 and 188 of the Restatement as necessary, depending on the factual circumstances and the nature of the legal arguments. *Hodas v Morin*, 442 Mass 544, 549-553; 814 NE2d 320 (2004). Consistent with the Restatement and the approach employed in Michigan, see *Chrysler*, 448 Mich at 124-127, the starting place of the analysis in Massachusetts is § 187(1), *Taylor*, 465 Mass at 195-196.

The issues in this case concern the rules for designating beneficiaries of the IRA governed by the contract and the distribution of the IRA assets to beneficiaries upon the depositor's death. Consequently, the primary concern of such provisions is to allow the depositor to choose how to dispose of the assets upon the depositor's death. Both Michigan and Massachusetts allow the terms of these arrangements to be made by contract. MCL 700.6309(1); MCL 700.6101(1); MCL 700.6310; Mass Gen Laws Ann ch 167D, § 15. Hence, these are certainly matters that could have been resolved by including relevant specific terms in the contract; instead, the contract incorporated by reference the law of Massachusetts to provide rules necessary to fill in any gaps

in the agreement regarding the disposition to beneficiaries. Restatement, § 187, comment c. These issues do not involve matters regarding the capacity of a party, contractual formalities, or whether the contract is illegal. Restatement, § 187, comment d. Accordingly, we will enforce the choice-of-law provision, and the substantive question regarding the distribution of IRA assets will be resolved under Massachusetts law. Restatement, § 187; *Chrysler*, 448 Mich at 124-125; *Taylor*, 465 Mass at 195-196.

Regarding the issue of IRA beneficiaries generally, the Massachusetts Supreme Court has explained:

> Although the income tax treatment of IRA assets is complex and dictated by Federal law, nearly all other legal aspects of these accounts are governed by State statutory and common law, and the contractual terms of account agreements as dictated by private financial institutions to consumers. See Sterk & Leslie, Accidental Inheritance: Retirement Accounts and the Hidden Law of Succession, 89 N.Y.U. L. Rev. 165, 174-175 (2014) (Sterk & Leslie). The procedure for transferring ownership of the IRA upon an account holder's death is among the legal aspects of an IRA dictated by State law. IRAs are a type of "nonprobate" asset, meaning that upon the death of the owner, title passes in accordance with a contractual beneficiary designation rather than under the provisions of a will. See [Mass Gen Laws Ann ch] 190B, § 6-101 (contract for nonprobate transfer on death not testamentary, meaning valid without will's formalities); [Mass Gen Laws Ann ch] 167D, § 15 (IRA beneficiary designations take effect according to contractual terms, "notwithstanding any purported testamentary disposition allowed by statute, by operation of law or otherwise to the contrary").
>
> In Massachusetts, as in most other jurisdictions, State law does not provide regulations or guidelines standardizing or otherwise governing the form or content of IRA beneficiary designations, the procedure for amending them, or the default provisions in the event no beneficiary is designated. Sterk & Leslie, supra, at 175. Financial intermediaries each use their own "standard form instruments with fill-in-the-blank beneficiary designations," . . . and typically, the contractual "framework keeps administrative costs down by limiting the inquiry required of the account custodian at the time of the accountholder's death." Sterk & Leslie, supra at 177. [*UBS Fin Servs, Inc v Aliberti*, 483 Mass 396, 399; 133 NE3d 277 (2019).]

Furthermore, "Massachusetts courts enforce the statutory directive of [Mass Gen Laws Ann ch] 167D, § 15, that nonprobate transfers shall be made in accordance with their own contractual terms, even when faced with a subsequent will provision to the contrary:" *UBS Fin Servs*, 483 Mass at 414. Massachusetts courts interpret a contract "according to the fair and reasonable meaning of its words." *Dorchester Mut Ins Co v Miville*, 491 Mass 489, 492; 204 NE3d 382 (2023) (quotation marks and citation omitted). Courts "strive whenever reasonably practical to give every word meaning when interpreting a contract." *Wortis v Trustees of Tufts College*, 493 Mass 648, 662; 228 NE3d 1163 (2024) (quotation marks and citation omitted). "[W]hen the words of a contract are clear, they must be construed in their usual and ordinary sense." *Id*. at 663 (quotation marks and citation omitted).

Here, Barbara's most recent beneficiary designations were made on April 17, 2018, and provided as follows:

Michelle M Veucasovic
Relationship Non Spouse Individual
Share 50.00%

Craig D Veucasovic
Relationship Trust
Share 50.00%

The Fidelity IRA custodial Agreement does not define "non-spouse individual" or "trust." The term "beneficiary" is defined in Article VIII, Section 1(e) to "mean the person(s) or entity (including a trust or estate, in which case the term may mean the trustee or personal representative acting in their fiduciary capacity) designated as such by the Depositor (or, following the death of the Depositor, designated as such by a Beneficiary) (i) in a manner acceptable to and filed with the Custodian pursuant to Article VIII, Section 7 of this Agreement, or (ii) pursuant to the default provisions of Article VIII, Section 7 of this Agreement." Under Article VIII, Section 1(i), the "Custodian" was Fidelity Management Trust Company and its successors, affiliates, and agents. Under Article VIII, Section 1(j), the "Depositor" was "the person named in the Account Application establishing an Account for the purpose of making contributions to an individual retirement account as provided for under the [Internal Revenue] Code."

Pursuant to Article VIII, Section 7(a) of the Custodial Agreement, "[a] Depositor . . . may designate a Beneficiary or Beneficiaries at any time, and any such designation may be changed or revoked at any time, by a designation executed by the Depositor . . . in a form and manner acceptable to, and filed with, the Custodian," and the "latest such designation or change or revocation shall control except as determined by applicable law." Furthermore, Article VIII, Section 7(a) additionally provides:

> If the Depositor had not by the date of his or her death properly designated a Beneficiary in accordance with the preceding sentence, or if no designated primary or contingent Beneficiary survives the Depositor, the Depositor's Beneficiary shall be his or her surviving spouse, but if he or she has no surviving spouse, his or her estate. If the Depositor designates more than one primary or contingent Beneficiary but does not specify the percentages to which such Beneficiary(ies) is entitled, payment will be made to the surviving Beneficiary(ies), as applicable, in equal shares. Unless otherwise designated by the Depositor in a form and manner acceptable to the Custodian, if a primary or contingent Beneficiary designated by the Depositor predeceases the Depositor, the Shares and Other Funding Vehicles for which that deceased Beneficiary is entitled will be divided equally among the surviving primary and contingent Beneficiary(ies), as applicable.

Michelle argues that the share designated for Craig's trust should be treated as if that trust had predeceased Barbara since that trust was never created and that this share thus should pass to Michelle under the terms of the agreement.

-14-

In *Ciampa v Bank of America*, 88 Mass App Ct 28, 28-29, 31; 35 NE3d 765 (2015), the Massachusetts Court of Appeals addressed the issue of how to allocate a 66% share of an IRA that had been designated to a beneficiary who did not exist. In that case, the decedent had been the owner of an IRA and had designated as contingent beneficiaries "James Cotgageorge, Jr.," who was to receive a sixty-six percent share, and "J. Edward Cotyup," who was to receive the other thirty-four percent share. *Id*. at 29. The decedent's husband, who had been the sole primary beneficiary, had predeceased her. *Id*. Each contingent beneficiary was identified as the decedent's " 'son,' but no Social Security number or date of birth was entered for either of them." *Id*. The decedent had a daughter named Jamie and a stepson named Edward, but "[n]o person with the name 'James Cotgageorge, Jr.' exist[ed] in either [the decedent's] or [her husband's] families." *Id*. Jamie filed an action and argued that the 66% share was payable to her. *Id*. at 30. Edward believed that the 66% share was meant for him. *Id*. The parties agreed, however, that "J. Edward Cotyup" referred to Edward and that he was entitled to the 34% share. *Id*. at 29-30.

The Massachusetts Court of Appeals held: "If the intended beneficiary of all or part of an express trust is unascertainable, that portion of the trust fails, and a resulting trust arises in favor of the settlor or her estate if she has died. That is the result we reach here." *Id*. at 34 (citation omitted).

It seems clear from Barbara's April 17, 2018 designation that she intended to designate a trust for Craig's benefit as a 50% share beneficiary of her IRA. There would have been no reason to include the word "trust" if she had not intended to designate a trust for Craig and no reason to include the term "trust" if she had wanted to designate Craig individually. Barbara knew how to designate an individual beneficiary, as evidenced by her designation of Michelle as a non-spouse individual. No provision in the Fidelity IRA Custodial Agreement specifically addresses where a non-existent trust is designated as a beneficiary. Under *Ciampa*, "[i]f the intended beneficiary of all or part of an express trust is unascertainable, that portion of the trust fails, and a resulting trust arises in favor of the settlor or her estate if she has died." *Id*. This issue is one of law that is for the court to resolve. *Id*. at 31.

Accordingly, as a matter of law, although a trust for Craig was an intended beneficiary of the IRA, that designation failed because the trust did not exist and was thus unascertainable. The share should have instead passed to Barbara's estate. The designation of Michelle as a 50% beneficiary was not invalidated by the failed designation to the non-existent trust.

The precise legal basis of the trial court's ruling invalidating the beneficiary designation on April 17, 2018, was unclear. The trial court referenced the "prevailing law" and the cases submitted by Michelle without referring to those cases by name in its final ruling. Michelle cited two cases in support of her argument in her motion for a default judgment: *Security Mut Life Ins Co of New York v Amira-Bell*, 342 Mich App 417; 995 NW2d 139 (2022), and *UBS Fin Servs*, 483 Mass 396. These two cases were also referenced by name at the hearing. The essential basis of the trial court's ruling was its conclusion that because the designation to the non-existent trust for Craig failed, the entire April 17, 2018 beneficiary designation was invalid, and it was necessary to look back to the first beneficiary designation that named identifiable beneficiaries and disposed of precisely 100% of the asset. It thus appears that the trial court relied on the *Security Mut Life* case that Michelle cited, although the court's ruling was nonetheless based on a misunderstanding of that case.

-15-

In *Security Mut Life*, this Court addressed "a probate dispute regarding insurance benefits owed by plaintiff, Security Mutual Life Insurance Company of New York, as a result of the death of its insured, Omari Kamau Bell." *Security Mut Life*, 342 Mich App at 418. This Court succinctly summarized the facts of that case as follows:

> On December 9, 2018, Bell named five individuals as equal beneficiaries of his insurance policies through Security Mutual Life Insurance. On December 20, 2018, Security Mutual Life Insurance sent Bell five letters indicating that it accepted Bell's beneficiary designations on each policy. Thereafter, on January 31, 2019, Bell completed five beneficiary-designation forms requesting to change the beneficiaries of each insurance policy. On the beneficiary-designation forms, he requested that Security Mutual Life Insurance name his estate as the sole beneficiary of each policy. However, Bell also listed Michigan Guardian Services as a beneficiary, both as a trust and as a business, and Bell indicated that Michigan Guardian Services was to receive 100% of the benefits in each separate capacity.

> On February 7, 2019, Security Mutual Life Insurance sent Bell—at the address of Bell's guardian—five letters indicating it could not process the change in beneficiaries because the respective percentages did not equal 100%. Security Mutual Life Insurance asked Bell to submit new beneficiary-designation forms that properly allocated the benefits, and Security Mutual Life Insurance advised Bell that the five original beneficiaries remained the beneficiaries on each policy. On November 6, 2019, approximately nine months after being advised that his requests for a change of beneficiaries had been rejected, Bell died without having completed new change-of-beneficiary forms.

> After Bell's death, Security Mutual Life Insurance and the personal representative of Bell's estate requested that the trial court determine the proper beneficiaries under the insurance policies. The trial court found that Security Mutual Life Insurance had improperly denied Bell's beneficiary designation because Bell had clearly intended to name his estate as the sole beneficiary, and Bell substantially complied with the beneficiary-change provisions by indicating such on the relevant forms. The trial court accordingly released the insurance benefits to Bell's estate. [*Id*. at 419-420.]

On appeal, this Court reversed and remanded for entry of an order that the five original beneficiaries were entitled to the insurance proceeds. *Id*. at 428. The Court stated that it "is well settled in Michigan that substantial compliance with change-of-beneficiary requirements is sufficient to effect a substitution," and that under "this threshold, where the contract of insurance outlines the manner or method by which beneficiaries may be designated or changed, the steps or formalities so stipulated must be at least substantially complied with . . . [because] in such a case a designation can be made effective only by following the policy provisions and by conforming to the manner or mode specified in the contract." *Id*. at 421 (quotation marks and citations omitted; ellipsis and alteration in original).

This Court concluded that Bell had not substantially complied with Security Mutual Life Insurance's beneficiary-designation provisions because the insurance policies expressly required

Security Mutual Life Insurance to approve beneficiary designations, and Bell had incorrectly completed the beneficiary designation forms and failed to submit properly completed forms after being informed that his attempt to change his beneficiary designations had been denied. *Id*. at 422, 424-425. Under the specific policy terms, "any intended beneficiary designation [was] invalid if Security Mutual Life Insurance disapprove[d] such designation." *Id*. at 424. Thus, the five original beneficiary designations remained in place. *Id*. at 427-428.

Barbara's April 17, 2018 beneficiary designation did not attempt to distribute *more* than 100% of the asset value, unlike the insured in *Security Mut Life*. Moreover, no evidence exists that Fidelity denied Barbara's April 17, 2018 beneficiary designation. Therefore, the relevant factual circumstances of this case are entirely distinguishable from those in *Security Mut Life*. That case does not support a ruling that designating a non-existent entity as a beneficiary, as occurred in this case, automatically invalidates the entire beneficiary designation as a matter of law. The trial court read too much into this Court's analysis of *Security Mut Life*.

Moreover, as discussed previously, the outcome in this case is governed by Massachusetts law according to the choice-of-law provision in the Custodial Agreement. Thus, the trial court's apparent reliance on *Security Mut Life* in this case was misplaced. Its ruling was based on an erroneous application of the law and thus constituted an abuse of discretion. *T & V Assoc*, ___ Mich App at ___; slip op at 8.

Therefore, we vacate the trial court's order and remand this matter for entry of an order that distributes Michelle's 50% share to her and the remaining 50% to Barbara's estate.

Vacated and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Jane E. Markey
/s/ Stephen L. Borrello
/s/ Kristina Robinson Garrett